Slip Op. 13-151

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **CHANG CHUN PETROCHEMICAL CO. LTD.,** | : |
| Plaintiff, | : |
| v. | : |
| **UNITED STATES**, | : **Before: Gregory W. Carman, Judge** |
| Defendant, | : Court No. 11-00095 |
| and | : |
| **SEKISUI SPECIALTY CHEMICALS AMERICA, LLC,** | : |
| Defendant-Intervenor. | : |

## OPINION & ORDER

[Commerce's *Remand Results* are sustained]

Dated: December 18, 2013

*Kelly A. Slater, Edmund W. Sim,* and *Jay Y. Nee,* Appleton Luff Pte Ltd., of Washington, DC, for Plaintiff.

*Alexander V. Sverdlov* and *Loren M. Preheim*, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant. With them on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director. Of counsel on the brief was *Melissa M. Brewer,* Attorney-International, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce.

*Daniel J. Plaine, Thomas M. Johnson, Jr., Andrea F. Farr,* and *James F. Doody*, Gibson Dunn & Crutcher, LLP, of Washington, DC, for Defendant-Intervenor.

**CARMAN, JUDGE:** Defendant-Intervenor Sekisui Specialty Chemicals America, LLC ("Defendant-Intervenor" or "Sekisui") partially challenges the Results of Redetermination Pursuant to Court Remand ("*Remand Results*"), dated July 12, 2013 (ECF No. 47-1), by Defendant U.S. Department of Commerce ("Defendant" or "Commerce") in the investigation of an antidumping duty order on polyvinyl alcohol ("PVA") from Taiwan. *See Polyvinyl Alcohol from Taiwan,* 76 Fed. Reg. 5,562 (Dep't of Commerce Feb. 1, 2011) (final determination of sales at less than fair value) ("*Final Determination*"), P.R.[1] 157, and accompanying Issues and Decision Memorandum, A-583-841 (Jan. 26, 2011), P.R. 153. Plaintiff Chang Chun Petrochemical Company Limited ("Plaintiff" or "CCPC") supports the *Remand Results*. Upon review of the *Remand Results* and parties' comments, the Court holds that Commerce fully complied with the Court's remand order and thus sustains the *Remand Results*.

## PROCEDURAL HISTORY

The procedural history of this case was detailed in Slip Opinion 13-49 ("Slip Op. 13-49") (ECF No. 42). Familiarity with the procedural history is presumed and only the essential events will be reproduced, as relevant, in this opinion. At the heart of this case was whether Commerce applied the proper regulation and whether Commerce properly applied that regulation.

---

[1] "P.R." stands for "Public Record."

In 1997, Commerce promulgated a targeted dumping regulation which supplemented the targeted dumping statute. *See* 19 C.F.R. § 351.414(f) (2004)[2] (hereinafter referred to as the "targeted dumping regulation").[3]

In September of 2004, Celanese Chemicals America, LLC—now known as Sekisui Specialty Chemicals America, LLC, Defendant-Intervenor in this case and a domestic producer of PVA—filed a petition against PVA from Taiwan that is the underlying administrative proceeding at issue. Celanese alleged all three types of targeted dumping—for customer, region and time period—against CCPC, Plaintiff in this case and the only known producer of PVA in Taiwan during the period of investigation from July 2003 to June 2004. On October 4, 2004, Commerce initiated a less than fair value investigation on PVA from Taiwan. *Polyvinyl Alcohol*

---

[2] All references to Title 19 of the Code of Federal Regulations refer to the 2004 edition, unless otherwise stated. The provision at issue in the instant case, 19 C.F.R. § 351.414(f), did not change between its promulgation in 1997 and the initiation of this investigation in 2004.

[3] The targeted dumping regulation, codified at 19 C.F.R. § 351.414(f) in 1997 and revoked in 2008, stated, in pertinent part:

> (f) *Targeted dumping*—(1) *In general*. Notwithstanding paragraph (c)(1) of this section, the Secretary may apply the average-to-transaction method, as described in paragraph (e) of this section, in an antidumping investigation if:
> . . . .
> (ii) The Secretary determines that such differences cannot be taken into account using the average-to-average method or the transaction-to-transaction method and explains the basis for that determination.
> (2) *Limitation of average-to-transaction method to targeted dumping*. Where the criteria for identifying targeted dumping under paragraph (f)(1) of this section are satisfied, the Secretary normally will limit the application of the average-to-transaction method to those sales that constitute targeted dumping under paragraph (f)(1)(i) of this section.

*from Taiwan*, 69 Fed. Reg. 59,204 (Dep't of Commerce Oct. 4, 2004) (initiation of antidumping duty investigation), P.R. 28.

Due to extensive litigation regarding the injury determination made by the International Trade Commission, the antidumping duty investigation was interrupted for six years. *See* Slip Op. 13-49 at 5-6. In September of 2010, Commerce issued its preliminary determination of dumping, *Polyvinyl Alcohol from Taiwan*, 75 Fed. Reg. 55,552 (Dep't of Commerce Sept. 13, 2010) (preliminary determination of sales at less than fair value and postponement of final determination), P.R. 127, and five months later its final determination with a weighted-average dumping margin of 3.08 percent, *Final Determination*, 76 Fed. Reg. at 5,563. Commerce determined that CCPC engaged in targeted dumping which warranted the application of the average-to-transaction method to all sales. The antidumping order was published in March. *Polyvinyl Alcohol from Taiwan*, 76 Fed. Reg. 13,982 (Dep't of Commerce Mar. 15, 2011) (antidumping duty order), P.R. 162.

In December of 2008, during the time that the injury determination was being litigated and the antidumping investigation was on hold, Commerce issued an interim final rule[4] which removed the targeted dumping regulation—19 C.F.R. § 351.414(f)— that had been in effect at the time the PVA investigation was initiated in 2004.

---

[4] *Withdrawal of the Regulatory Provisions Governing Targeted Dumping in Antidumping Duty Investigations*, 73 Fed. Reg. 74,930 (Dep't of Commerce Dec. 10, 2008) (interim final rule) (hereinafter referred to as "Withdrawal Notice"). The legality of the *Withdrawal Notice* was subsequently challenged, and a new withdrawal is under review at Commerce. *See Gold East Paper (Jiangsu) Co., Ltd. v. United States*, 37 C.I.T. __, 918 F. Supp. 2d 1317 (2013). However, the current legal challenge does not affect the outcome of this case because the targeted dumping regulation was unequivocally in effect during the period of review of the underlying proceeding.

Plaintiff brought this action challenging Commerce's decision to apply the targeted dumping methodology to CCPC's sales. *See* Pl.'s Mot. for J. on the Agency Record 56.2 (ECF No. 23). Defendant-Intervenor fully supported Commerce's *Final Determination*. Resp. Br. of Sekisui Specialty Chemicals America, LLC in Opp'n to Pl.'s Mot. for J. on the Agency Record (ECF No. 30). In the first slip opinion, the Court found that Commerce (1) properly applied the targeted dumping regulation in the underlying investigation and (2) has the discretion to shift policy because an agency's policy is not binding on itself. Slip Op. 13-49 at 17-19, 25-27. However, the Court remanded the case to Commerce (1) "to provide an explanation, pursuant to 19 C.F.R. § 351.414(f)(1)(ii), as to why the transaction-to-transaction method cannot account for the differences in Plaintiff's U.S. sales prices" and (2) "to provide a reasoned analysis or explanation, pursuant to 19 C.F.R. § 351.414(f)(2), as to why the specific circumstances of this case are such that the normal limitation on application of the average-to-transaction method is inappropriate to employ." *Id*. at 28.

On May 23, 2013, Commerce released the draft results of its remand redetermination to interested parties and provided parties the opportunity to comment. *Remand Results* at 2. Both Plaintiff and Defendant-Intervenor provided comments. *Id*. On July 12, 2013, Commerce filed its *Remand Results*, where it redetermined a weighted-average dumping margin of zero percent for CCPC. *Id*. Defendant-Intervenor challenges Commerce's *Remand Results*.

## STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006).[5] The Court sustains determinations, findings or conclusions of an agency unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 477 (1951) (internal quotation omitted). Courts "look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).

## DISCUSSION

### I.   Remand Results

On remand, Commerce redetermined CCPC's weighted-average dumping margin at zero percent. *Remand Results* at 2. Commerce "provided an explanation, pursuant to 19 C.F.R. § 351.414(f)(1)(ii), as to why the transaction-to-transaction method cannot account for the differences in the U.S. sales prices" of CCPC and "reconsidered its position regarding the application of the average-to-transaction method to CCPC's sales because there is no meaningful difference between applying the average-to-average method and the average-to-transaction

---

[5] All references to the United States Code refer to the 2006 edition, unless otherwise stated.

method when the average-to-transaction method is applied to only those sales found to be targeted pursuant to 19 C.F.R. § 351.414(f)(2)." *Id.* at 1-2 (footnote omitted).

Upon analysis, Commerce found that "use of the transaction-to-transaction method is inappropriate in this investigation." *Id*. at 2. Commerce noted that "Congress intended that [Commerce] would employ the transaction-to-transaction method in limited situations," specifically in the "unusual situations" where "there are a substantial number of sales," the product is "custom made," or the prices are volatile. *Id*. at 4. Commerce concluded that none of those circumstances were "present with respect to CCPC sales" and thus the use of transaction-to-transaction method was not warranted. *Id*. at 4-5.

Commerce further found that "it is neither impracticable to segregate CCPC's targeted sales nor that the targeting by CCPC was extensive," thus not justifying departure from the "normal" limitation of applying the average-to-transaction method to only CCPC's targeted sales. *Id*. at 6. Upon remand, Commerce employed the limitation found in the targeted dumping regulation at 19 C.F.R. § 351.414(f)(2). Accordingly, "in accordance with the regulatory language applicable to this investigation, [Commerce has] limited the application of the average-to-transaction method to only CCPC's targeted sales and recalculated CCPC's weighted-average dumping margin." *Id*.

CCPC agrees with Commerce, stating that the entirety of the *Remand Results* presents "a reasoned basis for examining whether . . . a departure [from the normal limitation on application of the average-to-transaction method] is appropriate in the case of CCPC" and properly analyzes "CCPC's reported sales data." Comments of Pl. Chang Chun Petrochemical Co. Ltd. on Results of Redetermination Pursuant to Court Remand ("Pl.'s Comments") at 3-4 (ECF No. 50).

Defendant-Intervenor Sekisui partially challenges the *Remand Results*. Sekisui agrees with Commerce's explanation regarding the first remand basis, as to "why the transaction-to-transaction comparison methodology cannot account for the differences in U.S. sales prices," but challenges Commerce's analysis regarding the second remand basis, as to why the "specific circumstances of this case are such that the normal limitation on application of the average-to-transaction method is inappropriate." Comments of Sekisui Specialty Chemicals America, LLC Regarding Final Results of Redetermination Pursuant to Court Remand ("Def.-Int.'s Comments") at 3 (ECF No. 55). Sekisui asserts that Commerce erred in its targeted sales analysis, neither properly defining nor quantifying the targeted sales, and urges the Court to issue an order instructing Commerce "to revise its dumping margin calculation accordingly." *Id*. at 4-5.

## II.     Remand Instructions

As previously stated, the Court remanded two issues to Commerce: (1) "to provide an explanation . . . as to why the transaction-to-transaction method cannot account for the differences in Plaintiff's U.S. sales prices" and (2) "to provide a reasoned analysis or explanation . . . as to why the specific circumstances of this case are such that the normal limitation on application of the average-to-transaction method is inappropriate to employ." Slip Op. 13-49 at 28.

### A.     Transaction-to-Transaction Comparison Method

The targeted dumping regulation required Commerce to provide an explanation of why the transaction-to-transaction method should not be applied. 19 C.F.R. § 351.414(f)(1)(ii). The Court found that Commerce's *Final Determination* was not in accordance with law because it

lacked "an explanation regarding the insufficiency of using the transaction-to-transaction method in this investigation." Slip Op. 13-49 at 20-21. Accordingly, the Court remanded this issue to Commerce to provide an explanation of why the transaction-to-transaction method could not be used in this case. *Id*. at 28.

### B.  The Limiting Clause

The targeted dumping regulation contained a clause that "normally" limited the application of the average-to-transaction method to only targeted sales. 19 C.F.R. § 351.414(f)(2). The Court found that Commerce's *Final Determination* was not in accordance with law because it lacked a "reasoned analysis or explanation regarding why this investigation does not constitute a normal situation" thereby requiring a departure from the norm. Slip Op. 13-49 at 24. Accordingly, the Court remanded this issue to Commerce to provide a reasoned analysis or explanation of why the normal limitation on the application of the average-to-transaction should not be employed in this case. *Id*. at 28.

### III. Analysis

#### A.  Transaction-to-Transaction Comparison Method

Consistent with Congressional intent, Commerce noted that the transaction-to-transaction method "will be employed only in unusual situations." *Remand Results* at 3 (internal quotation omitted). Commerce cited the SAA for what constitutes an "unusual situation," where "there are very few sales and the merchandise sold in each market is identical or very similar or is custom made." *Id*. at 4 (quoting Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 842 (1994) *reprinted in* 1994 U.S.C.C.A.N. 4040, 4178 ("SAA")). Commerce reasoned that neither of these unique circumstances is present in the

instant case. Def.'s Resp. to Comments upon the Remand Determination ("Def.'s Resp.") at 3. "Nor were there unique facts about Chang Chun's sales, such as price volatility" to give Commerce reason to consider applying the less favored comparison method. *Id*. Thus, Commerce determined that the "use of the transaction-to-transaction method is inappropriate." *Remand Results* at 5. No party challenges this redetermination. *See generally* Pl.'s Comments, Def.-Int.'s Comments at 3.

The Court holds that Commerce provided a sufficient explanation for its determination not to employ the transaction-to-transaction method that is consistent with the record evidence and in accordance with law. Therefore, Court sustains Commerce's determination not to employ the transaction-to-transaction method in this case.

### B.     The Limiting Clause

Consistent with its targeted dumping policy in effect at the time of the investigation, Commerce noted that the average-to-transaction method would only be applied "to all sales when it was impracticable to segregate the targeted sales or when the targeting was extensive." *Remand Results* at 6. On remand, Commerce found "that it is neither impracticable to segregate CCPC's targeted sales nor that the targeting by CCPC was extensive." *Id*.; *see also* Confidential Calculation Memo at 3 (ECF No. 48-2). Neither the regulation nor the policy defines the words extensive or widespread. While Sekisui offers its opinion on how Commerce should employ these terms, interpretation of a regulation and pertinent policy is left to the expertise of Commerce. The Court finds that Commerce's decision that Plaintiff's targeted dumping was neither extensive nor widespread is not arbitrary or capricious, well within its discretion, and entitled to deference.

Court No. 11-00095                                                                                                                    Page 11

      Commerce looked at samples of sales to the alleged targeted types. *Remand Results* at 7-8. The use of samples is statutorily authorized pursuant to 19 U.S.C. § 1677f-1. While no party challenges the use of samples, Defendant-Intervenor Sekisui asserts that all sales should have been considered targeted based on the samples. Def.-Int.'s Comments at 9, 13-14. Sekisui challenges Commerce's determination to apply the average-to-transaction method to only CCPC's targeted sales and argues that the average-to-transaction method should be applied to all of CCPC's U.S. sales. *Id*. Sekisui alleges that Commerce "abruptly and without notice changed its initial position." *Id*. at 3-4. Sekisui purports that Commerce came up with the wrong conclusion because Commerce did not properly define or quantify the targeted sales. *Id*. at 5. Further, Sekisui asserts that Commerce should have used a two part test to calculate targeted dumping in this case. Def.-Int.'s Comments at 7-10. In April 2008, Commerce introduced a new methodology for targeted dumping applying the above-referenced two part test.[6] Sekisui requests as relief that the Court direct Commerce to use a methodology established in 2008 in this 2004 case. This the Court will not do.

      Commerce considered and analyzed Sekisui's claims in a draft remand sent to interested parties on May 23, 2013. *Remand Results* at 2. Contrary to Sekisui's contention that Commerce "abruptly and without notice changed its initial position, now concluding that it should only apply the average-to-transaction methodology in its margin calculation to 'targeted' sales," Def.-Int.'s Comments at 3-4, Commerce did precisely what the Court instructed: Commerce analyzed

---

[6] *See Proposed Methodology for Identifying and Analyzing Targeted Dumping in Antidumping Investigations; Request for Comment*, 73 Fed. Reg. 26,371 (Dep't of Commerce May 9, 2008); *Mid Continent Nail Corp. v. United States*, 34 C.I.T. __, 712 F. Supp. 1370 (2010).

and provided a reasoned explanation whether to limit the application of the average-to-transaction method, *Remand Results* at 5-11.  The Court agrees with Defendant that Sekisui's contentions lack merit.  *See* Def.'s Resp. at 2.

Commerce further reasoned that it could "discern no other distinguishing facts or features of CCPC's U.S. sales (targeted or otherwise) such that the normal limitation of applying the average-to-transaction method to only CCPC's targeted sales is inappropriate."  *Remand Results* at 6 (internal quotation omitted).  Commerce thus determined to limit "the application of the average-to-transaction method to only CCPC's targeted sales and recalculated CCPC's weighted-average dumping margin."  *Id.*

After deciding to limit the application of the average-to-transaction method to only Plaintiff's targeted sales, Commerce realized that "there [is] no meaningful difference between applying the average-to-average method and the average-to-transaction method."  *Remand Results* at 1.  Using the average-to-average method resulted in a zero percent margin while using the average-to-transaction method resulted in a *de minimis* margin.  *Remand Results* at 10.  The targeted dumping regulation unequivocally showed a preference for using the average-to-average comparison method and allowed use of the other methods only if differences in export prices could not be taken into account using the average-to-average method.  19 C.F.R. § 351.414(f).  Commerce explained that it "compared the margin calculated by applying the average-to-transaction comparison only to targeted sales with the margin calculated using the average-to-average method" and "found that the differences were not significant."  Def.'s Resp. at 10.  Thus, Commerce decided to use the average-to-average method in the *Remand Results*.  *Id*. at 5.

The Court finds Commerce's decision to use the average-to-average method to calculate Plaintiff's dumping margin is not arbitrary or capricious and within the agency's discretion.

The Court holds that Commerce provided reasoned explanations for its determinations to limit the application of the average-to-transaction method and to ultimately use the average-to-average method. Those explanations are supported by the record and in accordance with law. Therefore, the Court sustains Commerce's redetermination in this case.

### CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's *Remand Results* are sustained; and it is further

**ORDERED** that Defendant-Intervenor's motion for oral argument (ECF No. 62) is denied.

Judgment to enter accordingly.

          /s/ Gregory W. Carman
          Gregory W. Carman, Judge

Dated: December 18, 2013
       New York, NY